UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| EDWARD A. CANIGLIA,<br>    Plaintiff | :<br>:<br>: |
| v. | :    C.A. No.   15-525 |
| | : |
| ROBERT F. STROM as the Finance Director of<br>THE CITY OF CRANSTON,<br>THE CITY OF CRANSTON, and<br>COL. MICHAEL J. WINQUIST in his official<br>capacity as Chief of the CRANSTON POLICE<br>DEPARTMENT<br>    Defendants | :<br>:<br>:<br>:<br>:<br>:<br>: |

**VERIFIED COMPLAINT FOR VIOLATION OF CONSTITUTIONAL RIGHTS
SEEKING INJUNCTIVE AND DECLARATORY RELIEF**

**PARTIES**

1. Plaintiff Edward A. Caniglia is a natural person and citizen of the United States and of the State of Rhode Island, residing in Cranston, Rhode Island. He is a semi-retired contractor.

2. Plaintiff has never been charged with or convicted of a crime. He has not been in community confinement as a condition of parole. Plaintiff is not mentally incompetent, a drug addict, or a habitual drunkard. He is not an unnaturalized foreign-born person.

3. Defendant City of Cranston ("the City") is a town chartered by the State of Rhode Island. Defendant Col. Michael J. Winquist is the Chief of the Cranston Police Department. As such, he is responsible for formulating, executing and administering with the City the laws, customs, practices, and policies at issue in this lawsuit. Through its Police Department, the City has enforced the challenged laws, customs and practices against plaintiff.

4. Defendant Robert F. Strom is the Finance Director of the City of Cranston. As such, he is responsible for assessing, collecting and authorizing the disbursement of all City money, for preparing and administering the annual City Budget, and for accounting of all financial transactions.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 as this case involves a federal question pertaining to the United States Constitution. The Court has pendant jurisdiction over Plaintiff's claims arising under state law.

6. Venue lies in this Court pursuant to 28 U.S.C. § 1391 as this is the judicial district where defendants reside and this is the judicial district where the cause of action arose.

## STATEMENT OF FACTS

*Background*

7. The Second Amendment to the United States Constitution provides: "A well regulated Militia being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."

8. The Second Amendment is incorporated as against the states through the Fourteenth Amendment, such that Defendant cannot, under color of law, deprive Plaintiff of his right to keep and bear arms.

9. Article 1, Section 22 of the Rhode Island Constitution provides: "The right of the people to keep and bear arms shall not be infringed."

10. Plaintiff legally obtained and possessed two guns, a Colt MK IV Series 80 .380 semi-automatic pistol and a Smith and Wesson .9mm semi-automatic pistol along with ammunition and magazines. Plaintiff kept the Colt under his bed for protection.

11. On or about August 21, 2015, Cranston police officers and Cranston Rescue paramedics went to Plaintiff's residence at 2300 Cranston Street, Cranston, Rhode Island in response to a call from Plaintiff's wife, Kim Caniglia, who said she was concerned about Plaintiff as she had not heard from him following a dispute between the couple the preceding evening. Mrs. Caniglia was not concerned about her own safety.

12. A true and accurate copy of the Cranston Police Department Incident Report is attached as Exhibit A.

13. An officer called Plaintiff on the telephone, informed Plaintiff they were there to check on his well-being and asked if they could stop by Plaintiff's residence to which he agreed.

14. Upon arrival at Plaintiff's home, the police officers informed Plaintiff that in these circumstances Plaintiff's firearms would be confiscated without a warrant if Plaintiff refused to submit to a mental health evaluation at the hospital.

15. Plaintiff agreed to submit to a mental health evaluation and was transported by rescue to Kent Hospital for evaluation. Plaintiff waited most of the day to be evaluated. The doctor at the hospital who eventually examined Plaintiff discharged him without further evaluation.

16. A true and accurate copy of the Kent Hospital Consultation Report is attached as Exhibit B.

17. At no time did Plaintiff give permission for his firearms to be confiscated by the police.

18. The Cranston Police Incident Report states, in part: "Kim [Mrs. Caniglia] arrived on the scene shortly after and per Captain Henry, he requested that we seize the two firearms that were in the house. Kim let us in the house and pointed out where the firearms were; which one was under the bed and the magazine was located in her bureau under clothes

where she had hid it. The second firearm was located in the garage behind the work bench which was also confiscated."

19. Defendants did not obtain a warrant before seizing Plaintiff's guns.

20. On information and belief, Defendants have a policy of seizing a person's weapons for "safekeeping" without a warrant if they believe that person may be threat to himself or others, even if that person has not been charged with or convicted of a crime, is not in community confinement as a condition of parole, is not mentally incompetent, a drug addict, or a habitual drunkard, or is not an unnaturalized foreign born citizen.

21. After Plaintiff was put into the rescue vehicle, the police officers told Plaintiff's wife that Plaintiff had given permission to confiscate the firearms. Based upon this statement, Plaintiff's wife led police to the locations of the firearms at which time the police officers confiscated the two above-mentioned firearms along with magazines, a magazine holder and ammunition.

22. The police officers informed Plaintiff's wife that once Plaintiff was cleared by the hospital that they could retrieve the guns by simply going to the police station to pick them up.

23. The police officers seized the Colt MK IV 80 .380 from under Plaintiff's bed and seized the Smith & Wesson .9mm from a hidden location in the garage and transported them to headquarters where they were "held for safe keeping." (Exhibit A).

24. The Colt has an approximate value of $600.00 and the Smith & Wesson has an approximate value of over $ 1,000.00.

25. On information and belief, the Cranston Police Department researched all of the firearms seized through the National Crime Information Center (NCIC) and with all being found negative for any criminal activity.

26. On information and belief, Defendants' officers logged all of the items seized and then forwarded them to its Bureau of Criminal Investigation (BCI) Division for "safe keeping."

27. On or about August 24, 2015, Plaintiff's wife went to the Cranston Police Department to retrieve the guns. She waited for about four (4) hours in the lobby before she was informed that she could leave and the guns would not be returned to her.

28. On or about September 1, 2015, Plaintiff received a voicemail from a Cranston Police officer. Plaintiff returned the phone call and left a message to which he received no response.

29. On or about the second week of September, 2015, Plaintiff went to the Cranston Police Department to retrieve his guns but Defendants again refused to return his guns.

30. On or about October 1, 2015, Attorney Nicholas Lambros sent a letter to Chief Winquist requesting the return of Plaintiff's guns to him. A true and accurate copy of the letter is attached hereto as Exhibit C.

31. Major Quirk called Attorney Lambros and said that Defendants would not release the guns until a judge orders them to do so.

32. At some point during these exchanges between Plaintiff and the Cranston Police Department Plaintiff was informed by the police department that it is their policy to not return guns confiscated in situations like his until there is a court order issued for the return of the guns.

33. When they seized Plaintiff's property, Defendants set in motion a series of events that they knew or should have known would result in Plaintiff's inability to recover, or extreme difficulty in recovering, his property.

34. Defendants have a custom, policy, or practice or requiring lawful weapons owners to engage in formal litigation to recover their seized property.

35. Plaintiff has been unable to recover his weapons even though his weapons are not evidence, have not been used to commit a crime, and Plaintiff has been cleared by a doctor as not being a threat to himself or others.

36. By seizing Plaintiff's property without notice, refusing to return it to him, and refusing to allow him a meaningful opportunity to be heard on the matter, Defendants have deprived Plaintiff of his property without due process of law.

37. By setting in motion a series of events that Defendants knew or should have known would result in inability or extreme difficulty in recovering Plaintiff's property, Defendants deprived Plaintiff of his property without due process of law.

38. By maintaining a custom, policy or practice of requiring lawful weapons owners, but not other property owners, to engage in formal litigation to recover their seized property, Defendants have denied Plaintiff the equal protection of the laws.

39. By refusing to return Plaintiff's weapons to him, Defendants have infringed on Plaintiff's right to keep and bear arms as guaranteed by the Second Amendment to the United States Constitution and incorporated to the States by the Fourteenth Amendment as well as Art. 1, Sec. 22 of the Rhode Island Constitution.

40. By seizing Plaintiff's property without a warrant Defendants have violated the Fourth Amendment of the United States Constitution and Art. 1, Sec. 6 of the Rhode Island Constitution.

### Count I – Violation of the Rhode Island Firearms Act

41. Paragraphs 1 through 40 are incorporated as though fully stated herein.

42. The Rhode Island Firearms Act, R.I.Gen.L. § 11-47-1, et seq., specifically governs this situation.  The Firearms Act expressly provides the limited circumstances under which persons are barred from possessing firearms and when Defendants may seize a person's firearms

43. R.I.Gen.L. § 11-47-6 states: "No person who is under guardianship or treatment or confinement by virtue of being a mental incompetent, or who has been adjudicated or is under treatment or confinement as a drug addict, shall purchase, own, carry, transport, or have in his or her possession or under his or her control any firearm."

44. This restriction does not apply to Plaintiff, nor do the other statutory restrictions on which persons cannot possess a firearm. R.I.Gen.L. §§ 11-47-5 (felons and fugitives from justice), 11-47-7 (unnaturalized foreign born persons).

45. Section 22(b) of the Act states:  "If the police department in the city or town in which the firearm was seized or confiscated has not been notified by a justice of the superior court or the attorney general that the firearm is necessary as evidence in a criminal or civil matter, it shall be returned to the rightful owner."  R.I.Gen.L. § 11-47-22(b) (emphasis added).

46. Plaintiff is not aware and has not been notified of any civil or criminal matter involving the guns nor have Defendants claimed there is any.

47. Defendants' unwritten policy of requiring persons whose guns they have seized to obtain an order in state court before they return them violates the Firearms Act.

48. The Firearms Act itself provides that "[u]nless otherwise specified, any violation of any provision of this chapter shall be punishable by a fine of not more than one thousand dollars ($1,000), or imprisonment for not more than five (5) years, or both…" R.I.Gen.L. § 11-47-26.

49. Rhode Island law provides for a private right of action whenever any a person is the victim of a crime and he suffers any injury to his person, reputation or estate as a result. R.I.Gen.Law § 9-1-2.

### Count II-Violation of Plaintiff's Right to Keep Arms

50. Paragraphs 1 through 48 are incorporated as though fully stated herein.

51. Plaintiff is a law abiding individual, competent in the safe handling of weapons. Plaintiff has also been declared by a doctor to not pose a threat of harm to himself or others. Accordingly, there exists no reason to deny Plaintiff possession of his lawfully obtained weapons.

52. By maintaining and enforcing a set of customs, practices, and policies depriving Plaintiff of his lawfully obtained weapons, Defendants are propagating customs, policies, and practices that violate the Second and Fourteenth Amendments to the United States Constitution as well as Art. 1, Sec. 2 of the Rhode Island Constitution, and thereby damaging Plaintiff in violation of 42 U.S.C. § 1983. Plaintiff is therefore entitled to permanent injunctive relief against such customs, policies, and practices.

### Count III– Violation of Plaintiff's Rights Under the Fourth Amendment and Art. 1, Sec. 6 of the Rhode Island Constitution

53. Paragraphs 1 through 51 are incorporated as though fully stated herein.

54. The Fourth Amendment of the United States Constitution provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

55. Article 1, Section 6 of the Rhode Island Constitution provides: "The right of the people to be secure in their persons, papers and possessions, against unreasonable searches and seizures, shall not be violated; and no warrant shall issue, but on complaint in writing, upon probable cause, supported by oath or affirmation, and describing as nearly as may be, the place to be searched and the persons or things to be seized."

56. By seizing Plaintiff's guns from his home without a warrant, Defendants violated the Fourth Amendment of the United States Constitution and Art. 1., Sec. 6 of the Rhode Island Constitution.

### Count IV – Violation of Plaintiff's Due Process

57. Paragraphs 1 through 55 are incorporated as though fully stated herein.

58. Plaintiff has a cognizable property interest in his weapons, the seizure and retention of which was caused by Defendants without sufficient due process. Defendants are propagating customs, policies, and practices that violate Plaintiff's right to due process under the Fourteenth Amendment to the United States Constitution and Art. 1, Sec. 2 of the Rhode Island Constitution, thereby damaging Plaintiff in violation of 42 U.S.C. § 1983. Plaintiff is therefore entitled to permanent injunctive relief against such customs, policies, and practices.

**Count V– Violation of Plaintiff's Right to Equal Protection**

59. Paragraphs 1 through 57 are incorporated as though fully stated herein.

60. By maintaining and enforcing a set of customs, practices, and policies depriving Plaintiff of his lawfully obtained weapons, Defendants are propagating customs, policies and practices that violate Plaintiff's rights to equal protection of the laws under the Fourteenth Amendment to the United States Constitution and Art. 1 Sec. 2 of the Rhode Island Constitution, thereby damaging Plaintiff in violation of 42 U.S.C. § 1983. Plaintiff is therefore entitled to permanent injunctive relief against such customs, policies, and practices.

**Prayer for Relief**

WHEREFORE, Plaintiff requests that judgment be entered in his favor and against Defendants as follows:

1. An order preliminarily and permanently enjoining Defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction, from enforcing the practice of seizing and retaining lawfully obtained weapons of individuals without a warrant who are deemed to be of no threat to themselves or others, and who have not been charged with a crime;

2. Declaratory relief that the practice of seizing and retaining lawfully obtained weapons of individuals who are deemed to be of no threat to themselves or others, and who have not been charged with a crime is unconstitutional either on its face and/or as applied to bar those individuals who are legally entitled to possess weapons;

3. Declaratory relief that the practice of requiring weapons owners who are not charged with a crime to engage in formal litigation in order to recover their seized property is unlawful and unconstitutional;

4. The immediate return of Plaintiff's weapons to him;

5. The cost of repair and/or replacement for any damage done to Plaintiff's weapons while in Defendants' possession;

6. Punitive damages in a sufficient amount to deter Defendants from further violating the rights of Plaintiff and other lawful weapon owners.

7. Costs of suit, including attorney fees and costs pursuant to 42 U.S.C. § 1988;

8. Any other relief as the Court deems just and appropriate.

Respectfully submitted,
**EDWARD CANIGLIA**
By his attorney,

/s/ Thomas W. Lyons
Thomas W. Lyons            #2946
Rhiannon S. Huffman        #8642
RHODE ISLAND AFFILIATE,
AMERICAN CIVIL LIBERTIES UNION
Strauss, Factor, Laing & Lyons
One Davol Square, Suite 305
Providence, RI 02903
(401) 456-0700
tlyons@straussfactor.com

PLAINTIFF HEREBY DEMANDS TRIAL BY JURY OF ALL ISSUES SO TRIABLE.

## VERIFICATION

I have read the allegations of this Complaint and state that they are true and accurate to the best of my knowledge and belief.

_____
Edward A. Caniglia

Subscribed and sworn to before me this _10_ day of __DECEMBER__, 2015.

_Marion Sipka_
Notary Public MARION SIPKA
My commission expires: 11-10-2016

12