# UNITED STATES DISTRICT COURT
## DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| EDWARD A. CANIGLIA, | : | |
| Plaintiff | : | |
| | : | |
| v. | : | C.A. No. 15-525 |
| | : | |
| ROBERT F. STROM as the Finance Director of | : | |
| THE CITY OF CRANSTON, | : | |
| THE CITY OF CRANSTON, COL. MICHAEL J. | : | |
| WINQUIST in his individual capacity and in his | : | |
| official capacity as Chief of the CRANSTON | : | |
| POLICE DEPARTMENT, CAPT. RUSSELL | : | |
| HENRY, JR., In his individual capacity and in | : | |
| his official capacity as an officer of the | : | |
| CRANSTON POLICE DEPARTMENT, MAJOR | : | |
| ROBERT QUIRK, in his individual capacity and in | : | |
| his official capacity as an officer of the | : | |
| CRANSTON POLICE DEPARTMENT, SGT. | : | |
| BRANDON BARTH, in his individual capacity | : | |
| And in his official capacity as an officer of the | : | |
| CRANSTON POLICE DEPARTMENT, | : | |
| OFFICER JOHN MASTRATI in his individual | : | |
| Capacity and in his official capacity as an officer | : | |
| Of the CRANSTON POLICE DEPARTMENT, | : | |
| OFFICER WAYNE RUSSELL in his individual | : | |
| Capacity and as an officer of the CRANSTON | : | |
| POLICE DEPARTMENT, OFFICER AUSTIN | : | |
| SMITH in his individual capacity and in his | : | |
| Official capacity as an officer of the CRANSTON | : | |
| POLICE DEPARTMENT, and JOHN and JANE | : | |
| DOES NOS 1-10, in their individual capacities | : | |
| And in their official capacities as officers of the | : | |
| CRANSTON POLICE DEPARTMENT | : | |
| Defendants | : | |

## AMENDED VERIFIED COMPLAINT FOR VIOLATION OF CONSTITUTIONAL RIGHTS SEEKING DAMAGES, INJUNCTIVE AND DECLARATORY RELIEF

**PARTIES**

1. Plaintiff Edward A. Caniglia is a natural person and citizen of the United States and of the State of Rhode Island, residing in Cranston, Rhode Island. He is a semi-retired contractor.

2. Plaintiff has never been charged with or convicted of a crime. He has not been in community confinement as a condition of parole. Plaintiff is not mentally incompetent, a drug addict, or a habitual drunkard. He is not an unnaturalized foreign-born person.

3. Defendant City of Cranston ("the City") is a town chartered by the State of Rhode Island. Defendant Col. Michael J. Winquist is the Chief of the Cranston Police Department. As such, he is responsible for formulating, executing and administering with the City the laws, customs, practices, and policies at issue in this lawsuit. Through its Police Department, the City has enforced the challenged laws, customs and practices against plaintiff.

4. Defendant Robert F. Strom is the Finance Director of the City of Cranston. As such, he is responsible for assessing, collecting and authorizing the disbursement of all City money, for preparing and administering the annual City Budget, and for accounting of all financial transactions.

5. Defendant Robert Quirk is a Major of the Cranston Police Department and serves as the Executive Office within the Department whose actions, either directly or in his supervisory capacity in this matter are set forth below in Paragraphs 18 through 62. He is sued individually and in his official capacity as a member of the Cranston Police Department.

6. Defendant Russell Henry, Jr. is a Captain of the Cranston Police Department and serves as the Day Uniform Division Commander, whose actions, either directly or in his supervisory capacity in this matter are set forth below in Paragraphs 18 through 62. He is sued individually and in his official capacity as a member of the Cranston Police Department.

7. Sgt. Brandon Barth is a member of the Cranston Police Department whose actions in this matter are set forth below on information and belief in Paragraphs 18 through 62. He is sued individually and in his official capacity as a member of the Cranston Police Department.

8. Officer John Mastrati is or was a member of the Cranston Police Department whose actions in this matter are set forth below on information and belief in Paragraph 18 through 62. He is sued individually and in his official capacity as a member of the Cranston Police Department.

9. Officer Wayne Russell is a member of the Cranston Police Department whose actions in this matter are set forth below on information and belief in Paragraph 18 through 62. He is sued individually and in his official capacity as a member of the Cranston Police Department.

10. Officer Austin Smith is a member of the Cranston Police Department whose actions in this matter are set forth below on information and belief in Paragraph 18 through 62. He is sued individually and in his official capacity as a member of the Cranston Police Department.

11. John and Jane Doe are other members of the Cranston Police Department who participated in violating Mr. Caniglia's constitutional rights whose identities are presently unknown.

## JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 as this case involves a federal question pertaining to the United States Constitution. The Court has pendant jurisdiction over Plaintiff's claims arising under state law.

13. Venue lies in this Court pursuant to 28 U.S.C. § 1391 as this is the judicial district where defendants reside and this is the judicial district where the cause of action arose.

## STATEMENT OF FACTS

### *Background*

14. The Second Amendment to the United States Constitution provides: "A well regulated Militia being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."

15. The Second Amendment is incorporated as against the states through the Fourteenth Amendment, such that Defendant cannot, under color of law, deprive Plaintiff of his right to keep and bear arms.

16. Article 1, Section 22 of the Rhode Island Constitution provides: "The right of the people to keep and bear arms shall not be infringed."

17. Plaintiff legally obtained and possessed two guns, a Colt MK IV Series 80 .380 semi-automatic pistol and a Smith and Wesson .9mm semi-automatic pistol along with ammunition and magazines. Plaintiff kept the Colt under his bed for protection.

18. On or about August 21, 2015, Cranston police officers Russell, Smith, Mastrati and Barth and Cranston Rescue paramedics went to Plaintiff's residence at 2300 Cranston Street, Cranston, Rhode Island in response to a call from Plaintiff's wife, Kim Caniglia, who said she was concerned about Plaintiff as she had not heard from him following a dispute between the couple the preceding evening. Mrs. Caniglia was not concerned about her own safety.

19. A true and accurate copy of the Cranston Police Department Incident Report is attached as Exhibit A.

20. An officer called Plaintiff on the telephone, informed Plaintiff they were there to check on his well-being and asked if they could stop by Plaintiff's residence to which he agreed.

21. Upon arrival at Plaintiff's home, the police officers informed Plaintiff that in these circumstances Plaintiff's firearms would be confiscated without a warrant if Plaintiff refused to submit to a mental health evaluation at the hospital.

22. Plaintiff agreed to submit to a mental health evaluation and was transported by rescue to Kent Hospital for evaluation. Plaintiff waited most of the day to be evaluated. The doctor at the hospital who eventually examined Plaintiff discharged him without further evaluation.

23. A true and accurate copy of the Kent Hospital Consultation Report is attached as Exhibit B.

24. At no time did Plaintiff give permission for his firearms to be confiscated by the police.

25. The Cranston Police Incident Report states, in part: "Kim [Mrs. Caniglia] arrived on the scene shortly after and per Captain Henry, he requested that we seize the two firearms that were in the house. Kim let us in the house and pointed out where the firearms were;

which one was under the bed and the magazine was located in her bureau under clothes where she had hid it. The second firearm was located in the garage behind the work bench which was also confiscated."

26. Defendants did not obtain a warrant before seizing Plaintiff's guns.

27. On information and belief, Defendants have a policy of seizing a person's weapons for "safekeeping" without a warrant if they believe that person may be threat to himself or others, even if that person has not been charged with or convicted of a crime, is not in community confinement as a condition of parole, is not mentally incompetent, a drug addict, or a habitual drunkard, or is not an unnaturalized foreign born citizen.

28. After Plaintiff was put into the rescue vehicle, the police officers told Plaintiff's wife that Plaintiff had given permission to confiscate the firearms. Based upon this statement, Plaintiff's wife led police to the locations of the firearms at which time the police officers confiscated the two above-mentioned firearms along with magazines, a magazine holder and ammunition.

29. On information and belief, Defendants made no attempt to obtain a certification from the Rhode Island state district court or from a physician that Plaintiff was in need of care and treatment in a mental health facility and that his continued presence in the community would create a likelihood of serious harm by reason of mental disability, pursuant to the Rhode Island Mental Health Law, R.I.Gen.L. § 40.1-5-1, et seq. (the "Mental Health Law").

30. On information and belief, Defendants did not attempt to certify to any mental health "facility," as defined by the Mental Health Law, that Plaintiff was a person "in need of

immediate care and treatment", and "one whose continued presence in the community would create an imminent likelihood of serious harm by reason of mental disability."

31. Nonetheless, the Cranston police insisted that Plaintiff submit to a mental health evaluation and he was transported to Landmark Medical Center in Woonsocket, Rhode Island for evaluation. The doctor at the hospital who examined him discharged him within a few minutes of arrival without further evaluation.

32. After Plaintiff was put into the rescue vehicle, the police officers told Plaintiff's wife that Plaintiff had given permission to confiscate the firearms. Based upon this statement, Plaintiff's wife led police to the locations of the firearms at which time the police officers confiscated the two above-mentioned firearms along with magazines, a magazine holder and ammunition.

33. The police officers informed Plaintiff's wife that once Plaintiff was cleared by the hospital that they could retrieve the guns by simply going to the police station to pick them up.

34. The police officers seized the Colt MK IV 80 .380 from under Plaintiff's bed and seized the Smith & Wesson .9mm from a hidden location in the garage and transported them to headquarters where they were "held for safe keeping." (Exhibit A).

35. The Colt has an approximate value of $600.00 and the Smith & Wesson has an approximate value of over $1,000.00.

36. On information and belief, the Cranston Police Department researched all of the firearms seized through the National Crime Information Center (NCIC) and with all being found negative for any criminal activity.

37. On information and belief, Defendants' officers logged all of the items seized and then forwarded them to its Bureau of Criminal Investigation (BCI) Division for "safe keeping."

38. On or about August 24, 2015, Plaintiff's wife went to the Cranston Police Department to retrieve the guns. She waited for about four (4) hours in the lobby before she was informed that she could leave and the guns would not be returned to her.

39. On or about September 1, 2015, Plaintiff received a voicemail from a Cranston Police officer. Plaintiff returned the phone call and left a message to which he received no response.

40. On or about the second week of September, 2015, Plaintiff went to the Cranston Police Department to retrieve his guns but Defendants again refused to return his guns.

41. On or about October 1, 2015, Attorney Nicholas Lambros sent a letter to Chief Winquist requesting the return of Plaintiff's guns to him. A true and accurate copy of the letter is attached hereto as Exhibit C.

42. Major Quirk called Attorney Lambros and said that Defendants would not release the guns until a judge orders them to do so.

43. Defendants informed Plaintiff that it is their policy to not return guns confiscated in situations like his until there is a court order issued for the return of the guns.

44. When they seized Plaintiff's property, Defendants set in motion a series of events that they knew or should have known would result in Plaintiff's inability to recover, or extreme difficulty in recovering, his property.

45. Defendants have a custom, policy, or practice or requiring lawful weapons owners to engage in formal litigation to recover their seized property.

46. On or about September 1, 2015, Plaintiff obtained from the Cranston Police Department a copy of its "Incident Report" with respect to the August 21, 2015 incident. A true and accurate copy of the Incident Report that was given to him by the Cranston Police Department is attached as Exhibit A.

47. On information and belief, the Cranston Police Department took no steps to prevent Plaintiff from obtaining any firearms after the August 21, 2015 incident.

48. On information and belief, the Cranston Police Department researched all of the firearms seized through the National Crime Information Center (NCIC) and with all being found negative for any criminal activity.

49. On information and belief, Defendants' officers logged all of the items seized and then forwarded them to its Bureau of Criminal Investigation (BCI) Division for "safe keeping."

50. Plaintiff was not charged with any crime nor has he ever been charged with any crime.

51. On information and belief, the Cranston Police Department has never been notified by a justice of the superior court or the attorney general that the firearm is necessary as evidence in a criminal or civil matter.

52. Plaintiff filed this lawsuit on December 11, 2015.

53. Plaintiff did not and could not replace the firearms Defendants had seized because Plaintiff experienced health issues, financial constraints and the firearms held sentimental value that could not be replaced with other or new firearms.

54. On May 5, 2015, a Cranston police officer left a voicemail message for Plaintiff telling him he could pick up his firearms, and Plaintiff's wife did so.

55. Defendants have customs, policies, or practices of seizing firearms for "safekeeping" even when the owners are not charged with a crime and are otherwise lawful guns in Rhode Island and of requiring lawful weapons owners to obtain court orders to recover their seized property.

56. On information and belief, Defendants have seized the firearms of numerous other people for "safekeeping."

57. When they seized Plaintiff's property, Defendants set in motion a series of events that they knew or should have known would result in Plaintiff's inability to recover, or extreme difficulty in recovering, his property.

58. By seizing Plaintiff's property without notice, refusing to return it to him, and refusing to allow him a meaningful opportunity to be heard on the matter, Defendants have deprived Plaintiff of his property without due process of law.

59. By setting in motion a series of events that Defendants knew or should have known would result in inability or extreme difficulty in recovering Plaintiff's property, Defendants deprived Plaintiff of his property without due process of law.

60. By maintaining a custom, policy or practice of requiring lawful weapons owners, but not other property owners, to engage in formal litigation to recover their seized property, Defendants have denied Plaintiff the equal protection of the laws.

61. By refusing to return Plaintiff's weapons to him, Defendants have infringed on Plaintiff's right to keep and bear arms as guaranteed by the Second Amendment to the United States Constitution and incorporated to the States by the Fourteenth Amendment as well as Art. 1, Sec. 22 of the Rhode Island Constitution.

62. Defendants' actions are capable of repetition, yet evade review, because, on information and belief, they have a practice of returning seized firearms when the owner files suit.

**Count I – Violation of the Rhode Island Firearms Act**

63. Paragraphs 1 through 62 are incorporated as though fully stated herein.

64. The Rhode Island Firearms Act, R.I.Gen.L. § 11-47-1, et seq., specifically governs this situation. The Firearms Act expressly provides the limited circumstances under which persons are barred from possessing firearms and when Defendants may seize a person's firearms.

65. R.I.Gen.L. § 11-47-6 states: "No person who is under guardianship or treatment or confinement by virtue of being a mental incompetent, or who has been adjudicated or is under treatment or confinement as a drug addict, shall purchase, own, carry, transport, or have in his or her possession or under his or her control any firearm."

66. This restriction does not apply to Plaintiff, nor do the other statutory restrictions on which persons cannot possess a firearm. R.I.Gen.L. §§ 11-47-5 (felons and fugitives from justice), 11-47-7 (unnaturalized foreign born persons).

67. Section 22(b) of the Act states: "If the police department in the city or town in which the firearm was seized or confiscated has not been notified by a justice of the superior court or the attorney general that the firearm is necessary as evidence in a criminal or civil matter, it shall be returned to the rightful owner." R.I.Gen.L. § 11-47-22(b) (emphasis added).

68. Plaintiff is not aware and has not been notified of any civil or criminal matter involving the guns nor have Defendants claimed there is any.

69. Defendants' unwritten policy of requiring persons whose guns they have seized to obtain an order in state court before they return them violates the Firearms Act.

70. The Firearms Act itself provides that "[u]nless otherwise specified, any violation of any provision of this chapter shall be punishable by a fine of not more than one thousand dollars ($1,000), or imprisonment for not more than five (5) years, or both…" R.I.Gen.L. § 11-47-26.

71. Rhode Island law provides for a private right of action whenever any a person is the victim of a crime and he suffers any injury to his person, reputation or estate as a result. R.I.Gen.Law § 9-1-2.

### Count II-Violation of Plaintiff's Right to Keep Arms

72. Paragraphs 1 through 71 are incorporated as though fully stated herein.

73. Plaintiff is a law abiding individual, competent in the safe handling of weapons. Plaintiff has also been declared by a doctor to not pose a threat of harm to himself or others. Accordingly, there exists no reason to deny Plaintiff possession of his lawfully obtained weapons.

74. By maintaining and enforcing a set of customs, practices, and policies depriving Plaintiff of his lawfully obtained weapons, Defendants are propagating customs, policies, and practices that violate the Second and Fourteenth Amendments to the United States Constitution as well as Art. 1, Sec. 2 of the Rhode Island Constitution, and thereby damaging Plaintiff in violation of 42 U.S.C. § 1983. Plaintiff is therefore entitled to permanent injunctive relief against such customs, policies, and practices.

### Count III– Violation of Plaintiff's Rights Under the Fourth Amendment and Art. 1, Sec. 6 of the Rhode Island Constitution

75. Paragraphs 1 through 74 are incorporated as though fully stated herein.

76. The Fourth Amendment of the United States Constitution provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

77. Article 1, Section 6 of the Rhode Island Constitution provides: "The right of the people to be secure in their persons, papers and possessions, against unreasonable searches and seizures, shall not be violated; and no warrant shall issue, but on complaint in writing, upon probable cause, supported by oath or affirmation, and describing as nearly as may be, the place to be searched and the persons or things to be seized."

78. By seizing Plaintiff's guns from his home without a warrant, Defendants violated the Fourth Amendment of the United States Constitution and Art. 1., Sec. 6 of the Rhode Island Constitution, and thereby damaging Plaintiff in violation of 42 U.S.C. § 1983.

**Count IV – Violation of Plaintiff's Due Process**

79. Paragraphs 1 through 78 are incorporated as though fully stated herein.

80. Plaintiff has a cognizable property interest in his weapons, the seizure and retention of which was caused by Defendants without sufficient due process. Defendants are propagating customs, policies, and practices that violate Plaintiff's right to due process under the Fourteenth Amendment to the United States Constitution and Art. 1, Sec. 2 of the Rhode Island Constitution, thereby damaging Plaintiff in violation of 42 U.S.C. § 1983. Plaintiff is therefore entitled to permanent injunctive relief against such customs, policies, and practices.

### Count V– Violation of Plaintiff's Right to Equal Protection

81. Paragraphs 1 through 80 are incorporated as though fully stated herein.

82. By maintaining and enforcing a set of customs, practices, and policies depriving Plaintiff of his lawfully obtained weapons, Defendants are propagating customs, policies and practices that violate Plaintiff's rights to equal protection of the laws under the Fourteenth Amendment to the United States Constitution and Art. 1 Sec. 2 of the Rhode Island Constitution, thereby damaging Plaintiff in violation of 42 U.S.C. § 1983. Plaintiff is therefore entitled to permanent injunctive relief against such customs, policies, and practices.

### Count VI-Violation of the Rhode Island Mental Health Law

83. Paragraphs 1 through 82 are incorporated as though fully stated herein.

84. The Rhode Island Mental Health Law sets for the exclusive processes by why Rhode Island governmental officials may deprive a private citizen of his or her rights due to the citizen's mental health issues. R.I.Gen.L. § 40.1-5-34.

85. On information and belief, Defendants did not attempt to obtain a certification from a physician or the state district that Plaintiff was "a person in need of immediate care and treatment, and…whose continued unsupervised presence in the community would create an imminent likelihood of serious harm by reason of mental disability…" R.I.Gen. L. §§ 40.1-5-7, 40.1-5-8.

86. On information and belief, Defendants did not make any application for emergency certification of Plaintiff to a mental health "facility" as defined under the Mental Health Law.

87. Instead, Defendants insisted that Plaintiff go to Kent Hospital in Warwick, Rhode Island for evaluation. The medical personnel at the hospital who examined him discharged him the same day.

88. On information and belief, Defendants knowingly and willfully conspired unlawfully to improperly attempt to cause Plaintiff to be admitted or certified to a medical or mental health facility even though he was not "a person in need of immediate care and treatment, and…whose continued unsupervised presence in the community would create an imminent likelihood of serious harm by reason of mental disability…"

89. Accordingly, Defendants' actions violate the Rhode Island Mental Health Law and their actions constitute a crime, pursuant to R.I.Gen.Law § 40.1-5-38.

90. Rhode Island law provides for a private right of action whenever any a person is the victim of a crime and he suffers any injury to his person, reputation or estate as a result. R.I.Gen.Law § 9-1-2.

### Count VII-Trover and Conversion

91. Paragraphs 1 through 90 are incorporated as though fully stated herein.

92. On August 21, 2015, Plaintiff lawfully possessed his firearms in his home.

93. Defendants seizing his firearms without his permission and retained them for several months despite his repeated requests that they be returned.

94. Plaintiff has a right to possession of those firearms

95. Defendants had no legal justification for seizing and retaining his firearms.

96. Defendants' actions constituted conversion of Plaintiff's firearms.

**Prayer for Relief**

WHEREFORE, Plaintiff requests that judgment be entered in his favor and against Defendants as follows:

1. An order preliminarily and permanently enjoining Defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction, from enforcing the practice of seizing and retaining lawfully obtained weapons of individuals without a warrant who are deemed to be of no threat to themselves or others, and who have not been charged with a crime;

2. Declaratory relief that the practice of seizing and retaining lawfully obtained weapons of individuals who are deemed to be of no threat to themselves or others, and who have not been charged with a crime is unconstitutional either on its face and/or as applied to bar those individuals who are legally entitled to possess weapons;

3. Declaratory relief that the practice of requiring weapons owners who are not charged with a crime to engage in formal litigation in order to recover their seized property is unlawful and unconstitutional;

4. The cost of repair and/or replacement for any damage done to Plaintiff's weapons while in Defendants' possession;

5. Damages for Plaintiff's loss of use of his weapons;

6. Punitive damages in a sufficient amount to deter Defendants from further violating the rights of Plaintiff and other lawful weapon owners.

7. Costs of suit, including attorney fees and costs pursuant to 42 U.S.C. § 1988;

8. Any other relief as the Court deems just and appropriate.

Respectfully submitted,

**EDWARD A. CANIGLIA**
By his attorneys,

/s/ Thomas W. Lyons
Thomas  W. Lyons              #2946
Rhiannon S. Huffman          #8642
RHODE ISLAND AFFILIATE,
AMERICAN CIVIL LIBERTIES UNION
Strauss, Factor, Laing & Lyons
One Davol Square, Suite 305
Providence, RI 02903
(401) 456-0700
tlyons@straussfactor.com

PLAINTIFF HEREBY DEMANDS TRIAL BY JURY OF ALL ISSUES SO TRIABLE.

## **VERIFICATION**

I have read the allegations of this Complaint and state that they are true and accurate to the best of my knowledge and belief.

*Edward A. Caniglia*

Edward A. Caniglia

STATE OF _Rhode Island_
COUNTY OF _Providence_

On _May 18, 2017_ , before me, the undersigned notary public, personally appeared _Edward A. Caniglia_ , ☒ personally known to the notary or ☐ proved to the notary through satisfactory evidence of identification, which was _____, to be the person who signed above in my presence, and who swore or affirmed to the notary this document was signed freely and voluntarily.

_RH CHE_

Notary Public
My commission expires: _5/25/20_
Notary Identification Number: _754131_

RHIANNON S. HUFFMAN
NOTARY PUBLIC
STATE OF RHODE ISLAND
MY COMMISSION EXPIRES
MAY 25, 2020

**<u>CERTIFICATION</u>**

I hereby certify that on May 18, 2017 a copy of the foregoing was filed and served electronically on all registered CM/ECF users through the Court's electronic filing system and served by email on Marc DeSisto, Esq., attorney for defendants. Parties may access this filing through the Court's CM/ECF system.

/s/ Thomas W. Lyons