UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| EDWARD A. CANIGLIA,<br>   Plaintiff,<br><br>v.<br><br>ROBERT F. STROM as the Finance Director of THE CITY OF CRANSTON; THE CITY OF CRANSTON, COL. MICHAEL J. WINQUIST in his individual capacity and in his official capacity as Chief of the CRANSTON POLICE DEPARTMENT; CAPT. RUSSELL HENRY, JR., in his individual capacity and in his official capacity as an officer of the CRANSTON POLICE DEPARTMENT; MAJOR ROBERT QUIRK, in his individual capacity and in his official capacity as an officer of the CRANSTON POLICE DEPARTMENT; SGT. BRANDON BARTH, in his individual capacity and in his official capacity as an officer of the CRANSTON POLICE DEPARTMENT; OFFICER JOHN MASTRATI in his individual capacity and in his official capacity as an officer of the CRANSTON POLICE DEPARTMENT; OFFICER WAYNE RUSSELL in his individual capacity and as an officer of the CRANSTON POLICE DEPARTMENT; OFFICER AUSTIN SMITH in his individual capacity and in his official capacity as an officer of the CRANSTON POLICE DEPARTMENT; and JOHN and JANE DOES Nos. 1-10, in their individual and official capacities as officers of the CRANSTON POLICE DEPARTMENT, | No. 1:15-cv-00525-JJM-LDA |

|                | )   |
| -------------- | --- |
| Defendants.    | )   |
|                | )   |

## ORDER

Before the Court is Defendants' Second Motion for Summary Judgment, ECF No. 84.

The individual Defendants have moved the Court primarily on two grounds: qualified immunity, asserting that the law on the community care taking function doctrine as it applies to the home was not clearly established at the time of the alleged constitutional violation;[1] and that the City of Cranston cannot be held liable on a theory of municipal liability under *Monell.* ECF No. 84-1. The Court GRANTS Defendants' Second Motion for Summary Judgment with regard to qualified immunity but DENIES Defendants' Second Motion for Summary Judgment as to *Monell* liability.

### A. Qualified Immunity

The United States Supreme Court reaffirmed the doctrine of qualified immunity last week in two *per curiam* opinions. In *City of Talequah, OK v. Bond*, the Supreme Court held that "[t]he doctrine of qualified immunity shields officers from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"

---

[1] Defendants also argue that the Court should grant summary judgment on the ground of qualified immunity because the Court has already decided this issue. ECF No 84-1 at 4–5. The Court does not reach its conclusion on a basis of either res judicata or issue preclusion. The Court does so de novo.

*City of Tahlequah, OK v. Bond*, No. 20-1668, 2021 WL 4822664, at *2 (U.S. Oct. 18, 2021) (citing *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). To show the law was clearly established, a party must identify precedent that "addresses facts like the ones at issue" in that matter. *Rivas-Villegas v. Cortesluna*, No. 20-1539, 2021 WL 4822662, at *3 (U.S. Oct. 18, 2021). Moreover, "[i]t is not enough that a rule be suggested by then-existing precedent; the rule's contours must be so well defined that it is 'clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *City of Tahlequah*, 2021 WL 4822664, at *2 (citing *D.C. v. Wesby*, 138 S. Ct. 577, 590 (2018)). Qualified immunity, the Supreme Court mandates, protects "all but the plainly incompetent or those who knowingly violate the law." *Id.* (internal quotations omitted).

The law on the community caretaking function as an exception to traditional warrant procedures in the home was far from clear at the time Mr. Caniglia's cause of action arose, particularly within this Circuit. This Court previously ruled as such, and upon independent review again, those facts and findings set forth below still hold true.

> "Qualified immunity protects an officer from suit when a reasonable decision in the line of duty ends up being a bad guess—in other words, it shields from liability 'all but the plainly incompetent or those who knowingly violate the law.'" *Belsito Commc'ns, Inc. v. Decker*, 845 F.3d 13, 22–24 (1st Cir. 2016) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743, 131 S. Ct. 2074, 179 L.Ed.2d 1149 (2011)); see also *Morelli v. Webster*, 552 F.3d 12, 19 (1st Cir. 2009). A two-step inquiry requires the court to ask "(1) whether the facts alleged or shown by the Plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was 'clearly established' at the time of the defendant's alleged violation." *Maldonado v. Fontánes*, 568 F.3d 263, 269 (1st Cir. 2009) (quoting *Pearson v. Callahan*, 555 U.S. 223, 243, 129 S. Ct. 808, 172 L.Ed.2d 565

3

> (2009)). The second step has two prongs: a law is clearly established depending on (1) "the clarity of the law at the time of the alleged civil rights violation" and (2) "whether a reasonable defendant would have understood that his conduct violated the plaintiffs' constitutional rights." *Id.* The Court therefore must inquire "whether, at the time of the intrusion, Fourth Amendment jurisprudence signaled to the individual defendants in this case that their conduct overstepped constitutional boundaries." *MacDonald v. Town of Eastham*, 745 F.3d 8, 12 (1st Cir. 2014).
>
> When the First Circuit has considered whether the community caretaking function applies to searches and seizures in homes as well as cars, it observed that "the reach of the community caretaking doctrine is poorly defined outside of the motor vehicle milieu," that it "has not decided whether the community caretaking exception applies to police activities involving a person's home," and that the case law reveals that the scope and boundaries of the community caretaking exception are nebulous." *Id.* at 13-14. The First Circuit concluded that "neither the general dimensions of the community caretaking exception nor the case law addressing the application of that exception provides the sort of red flag that would have semaphored to reasonable police officers that their entry into the plaintiff's home was illegal." *Id.* at 15.
>
> Because of this ambiguity, the Court finds that it is not clearly established that the community caretaking exception does not apply to police activity in the home intended to preserve and protect the public. *Gemma*, 818 F.3d at 32.

*Caniglia v. Strom*, 396 F. Supp. 3d 227, 235–36 (D.R.I. 2019), aff'd, 953 F.3d 112 (1st Cir. 2020), vacated and remanded, 141 S. Ct. 1596 (2021).

Indeed, the very fact that Supreme Court disagreed with this Court and the First Circuit on the issue of community care taking function illustrates a lack of clarity. Thus, it is not possible that a reasonable Cranston Police Officer could have understood the potentially problematic nature of their conduct.

Because the law was not clearly established on the community caretaking exception at the time of the alleged constitutional violation, the Court GRANTS Defendants' Second Motion for Summary Judgment with respect to the individual

4

Defendants on the ground of qualified immunity, ECF No. 84.[2] Plaintiff's policy arguments cannot overcome, and do not comport with, the well-established rulings of the U.S. Supreme Court on qualified immunity, which this Court is bound to follow.

### B. *Monell* Liability

*Monell* holds that a municipality may be sued when the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). "[T]he word 'policy' generally implies a course of action consciously chosen from among various alternatives." *Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 131 S.Ct. 1350, 1359 (2011). It is well established that police action or inaction may constitute a policy within the definition of *Monell* liability.

---

[2] The Court need not, and does not, address whether there was a constitutional violation in this matter. Given the Supreme Court's decision in *Pearson v. Callahan*, "[t]he judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. 223, 236 (2009); *see also City of Tahlequah, Oklahoma v. Bond*, No. 20-1668, 2021 WL 4822664, at *2 (U.S. Oct. 18, 2021) ("We need not, and do not, decide whether the officers violated the Fourth Amendment in the first place, or whether recklessly creating a situation that requires deadly force can itself violate the Fourth Amendment. On this record, the officers plainly did not violate any clearly established law.") Therefore, the Court resolves this matter solely upon an analysis of the second prong of the qualified immunity doctrine.

*See, e.g., Young v. City of Providence ex rel. Napolitano*, 404 F.3d 4, 32 (1st Cir. 2005) (holding that a triable issue existed on Plaintiff's failure to train claim, and thus the City of Providence could be held liable).

Defendants argue that Mr. Caniglia has not articulated a claim against the City for a violation of constitutional rights. As to Mr. Caniglia's argument whether there was a constitutional violation, a jury could reasonably infer, from his arguments relating to an underlying policy, that a constitutional violation existed. Indeed, there would be little benefit in making the argument that the Cranston Police Department had a policy of constitutional violations if there was presumption of an underlying constitutional violation.

Moreover, despite Defendants' arguments to the contrary, Mr. Caniglia can present evidence of an unconstitutional policy or practice. It is true that metaphorical bar in municipal liability matters is very high. *Id.* at 26. However, that bar is not set impossibly high, such that no plaintiff could overcome it. Defendants' arguments try to foreclose any potentiality that a plaintiff could present evidence of an unconstitutional policy or practice. Defendants rely upon Captain Russell C. Henry, Jr.'s deposition to reach this conclusion. In his deposition, Captain Henry stated: "there's no way to legislate reasonableness," and "[j]ust like you can't legislate discretion, it's all based on what the officer feels based on facts they're presented with." ECF No. 84-3 at 78:14–15, 17–20.

However, this does not foreclose the possibility that that police discretion, regardless of whether "handled on 'a case-by-case basis,'" *id.* at 77:18 – 21, still may

be predicated on an underlying policy of unconstitutional practices. Because a reasonable jury could conclude that the discretionary decisions by the Cranston Police Department were based upon unconstitutional policy, the Court cannot grant summary judgment for Defendants on this claim.

### C. Conclusion

For these reasons, the Court GRANTS in part and DENIES in part Defendants' Second Motion for Summary Judgment. More particularly, summary judgment is GRANTED with regard to qualified immunity. However, summary judgment is DENIED with regard to *Monell* liability. ECF No. 84.

IT IS SO ORDERED.

_____
John J. McConnell, Jr.
United States District Chief Judge

October 27, 2021